**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------- X
PROPETROL LIMITED,                 :   Civ. No. 1:24-cv-330
                Petitioner,   :   **PETITION TO**
    against                    :   **ENJOIN**
QMF ENERGY DMCC,                   :   **ARBITRATION**
                Respondent.   :
---------------------------------- X

Petitioner Propetrol Limited ("**Propetrol**" or "**Petitioner**"), by and through its attorneys, Watson Farley & Williams LLP, makes a limited, special appearance[1] seeking an order enjoining the arbitration (the "**Arbitration**") initiated by Respondent QMF Energy DMCC ("**QMF**" or "**Respondent**") in this district before the Society of Maritime Arbitrators ("**SMA**"). This court has jurisdiction over this matter as it involves a maritime claim and pursuant to the Federal Arbitration Act ("**FAA**"), 9 United States Code ("**U.S.C.**") §1 *et seq.* Petitioner alleges on knowledge as to its own actions, and otherwise upon information and belief:

**INTRODUCTION**

1. This is a petition to enjoin Respondent QMF from improperly pursuing an arbitration before the SMA against Propetrol arising from an arbitration agreement that Propetrol never agreed to or signed.

2. Petitioner seeks an order from this Court pursuant to Federal Rule of Civil Procedure ("**FRCP**") 65, the FAA, and New York Civil Practice Law and Rule §7503, enjoining Respondent from seeking to arbitrate a dispute against non-signatory Propetrol.

---

[1] Petitioner makes this special appearance to enjoin the Arbitration wrongfully commenced in this district and does not waive any arguments it may have that it is not subject to personal jurisdiction in New York or this district.

3. Respondent QMF has commenced arbitration against Propetrol and another entity claiming damages for outstanding payments due for fuel supplied by QMF; however, Propetrol did not request the fuel, order the fuel, or otherwise contract with QMF to supply fuel to the M/V GMS TRACKER 01 (the "**Vessel**") and should not be forced to arbitrate against QMF. QMF has continued to pursue the arbitration despite Propetrol's objection to being named a party in the Arbitration.

## PARTIES

4. Petitioner Propetrol Limited is a corporation incorporated in Nigeria and has its principal place of business in Lagos, Nigeria. Petitioner provides high quality petroleum products and owns several marine oil tankers.

5. At all relevant times, Propetrol owned the Vessel, which was chartered by Propetrol, as owner, to Global Marine Technical Services Ltd. ("**GMTS**"), as charterer, pursuant to a bareboat charterparty dated May 1, 2022 (the "**Charter**"). (Ex. 1 (Charter)).

6. Both GMTS and Propetrol are named as respondents in arbitration proceedings commenced by Respondent QMF, as further detailed below.

7. Upon information and belief, Respondent QMF Energy DMCC is a corporation incorporated in the United Arab Emirates and has its principal place of business in Dubai, United Arab Emirates. Respondent supplies and trades marine fuels (bunkers) to the oil and shipping industries.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over this action pursuant to Federal Arbitration Act, 9 U.S.C. §§1-3 and 203, as this is a civil action concerning an arbitration falling under the Convention on the Enforcement and Recognition of Foreign Arbitral Awards, and venue is proper pursuant to 9 U.S.C. §4. The arbitration that Petitioner seeks to enjoin is currently pending in New York.

9. Furthermore, this Court possesses maritime jurisdiction over this matter, as the dispute is rooted in a maritime transaction, specifically the provision of marine fuels to vessels. Under 28 U.S.C. § 1333(1), federal district courts hold original jurisdiction over any civil case of admiralty or maritime jurisdiction.

**FACTS**

Factual Background

10. Propetrol was formed in 1995. (Declaration of Gerald Ugwuanyi ("**Ugwuanyi Decl.**") ¶3). Propetrol provides high quality petroleum products and owns several marine oil tankers. (*Id.* at ¶4).

11. Propetrol's office is located in an office building with other businesses, at Admiralty Road 23, Lekki Phase 1, Lagos, Nigeria.

12. Propetrol's current directors are: Harry Ebohon; Afe Ebohon; Kelvin Onuoka; and Isah Billy. (*Id.* at ¶5).

13. Propetrol's current shareholders are: Harry Ebohon; Tommy Ebohon; and Afe Ebohon. (*Id.* at ¶5).

14. As detailed further herein, Propetrol is owner of the Vessel, which it purchased in early 2022. (*Id*. at ¶7).

15. Upon information and belief, at all relevant times Mr. Christoph Glaubitz was the Managing Director/Chief Executive Officer of GMTS. (*Id.* at ¶13).

16. Prior to Propetrol's purchase of the Vessel, Mr. Harry Ebohon was one of the directors of GMTS. However, Mr. Harry Ebohon exited from the GMTS board and relinquished his shares in GMTS around May 2022. (*Id.* at ¶15).

17. The current directors and shareholders of GMTS are: Christoph Glaubitz; Daniel Oseb; and Kingsley C. Eburuo. (*Id.* at ¶16).

GMTS is Bareboat Charterer of the Vessel

18. Christoph Glaubitz, on behalf of himself and GMTS, approached Propetrol with the proposal that Propetrol purchase the Vessel and bareboat charter it to GMTS. (*Id.* at ¶14).

19. Propetrol and GMTS are separate and independent companies, with distinct directors and shareholders. (*See id.* at ¶¶5, 9, 16, 17).

20. Propetrol's bank accounts, recordkeeping and management are separate and apart from that of GMTS. (*Id.* at ¶17).

21. Ultimately Propetrol, as owner, and GMTS, as charterer, entered into a bareboat charterparty agreement (the Charter) for the Vessel. The Charter commenced on May 1, 2022, with an initial term until April 30, 2024. (Ugwuayni Decl. ¶18).

22. The Charter entered into between Propetrol and GMTS was at arms' length.

23. Under the terms of the Charter, GMTS, as charterer, "shall be in the full possession of the Charterer and under its complete control. The Charterer shall at its own sole and exclusive cost and risk… provide fuel/bunkers…. The Master, officers and crew shall be the servants and representatives of the Charterer for all purposes…". (Ex. 1, Charter Part I, cl. 7(d)).

24. The Charter requires GMTS to pay charter hire and other payments to Propetrol. (*See id.* at Part II, cl. 3).

25. GMTS has failed to pay Propetrol hire and other amounts due in connection with GMTS's use of the Vessel. (Ugwuanyi Decl. ¶19).

26. As of January 2024, GMTS owes to Propetrol charter hire and other payments of nearly US$3.3 million. (*Id.* at ¶20)).

27.     Propetrol has made several attempts to recover the sums owed by GMTS to Propetrol but has not received any further payments from GMTS. (*Id.* at ¶¶21-22).

GMTS Orders Bunkers for Vessel

28.     QMF has asserted in its Claim Submission submitted to the Panel dated December 22, 2023 (the "**Claim Submission**") that on or about (i) September 9, 2022, (ii) October 26, 2022, and (iii) November 3, 2022, QMF supplied fuel to the Vessel (the "**Bunkers**") and has not been fully compensated therefor. (Ex. 2 (Claim Submission ¶29)).

29.     At the time QMF claims to have provided the Bunkers to the Vessel, the Vessel was chartered, operated, and controlled by GMTS pursuant to the Charter. Indeed, QMF has conceded that at all relevant times the Vessel was managed by and chartered to GMTS. (Ex. 2 (Claim Submission ¶10)).

30.     For the avoidance of doubt, there was no communication between Propetrol and QMF regarding the ordering of the Bunkers. The Bunkers were exclusively ordered by GMTS.

31.     Further, GMTS was not Propetrol's agent, and QMF has not adequately alleged that Propetrol instructed, directed or ordered GMTS to order bunkers from QMF. (Ugwuanyi Decl. at ¶23).

32.     Propetrol did not order the Bunkers from QMF and did not enter into a contract with QMF for the Bunkers.

33.     All of the order confirmations sent by QMF for the Bunkers (the "**Order Confirmations**") were sent from QMF to GMTS, and identified GMTS as "Buyer." None of the confirmation expressly name Propetrol. (*See, e.g.,* Ex. 2 Claim Submission, pgs. 16, 27, 33 (Exs. 1, 3, 5 of Claim Submission)).

34.     The Order Confirmations state, *inter alia*, "QMF Energy GT&C to apply." (*See id.*).

35.     The QMF T&C at cl. 20.1 provides:

> This Contract shall be governed by and construed in accordance with the Maritime Law of the United States, Title 9 of the United States Code, and the Uniform Commercial Code as applied in New York. Any dispute arising out of or in connection with this Contract shall be referred to arbitration

before three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final, and for the purposes of enforcing any award, judgement may be entered on an award by any court of competent jurisdiction. The proceedings shall be conducted in accordance with the rules of the Society of Maritime Arbitrators, Inc. In cases where neither the claim nor any counterclaim exceeds the sum of US$75,000 (or such other sum as the parties may agree) the arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society of Maritime Arbitrators, Inc. current at the time when the arbitration proceedings are commenced. The arbitrators shall be commercial men and/or familiar with shipping matters.

36. Additionally, the invoices sent by QMF for the Bunkers (the "**Invoices**") were sent to GMTS only, and did not expressly name Propetrol.

37. When GMTS failed to make payment for Bunkers when due, QMF (specifically Mr. Gazi Yayla) reached out directly to Propetrol (and specifically Mr. Ebohon) not as the entity that ordered or bought the Bunkers, but as the owners of the Vessel to which bunkers were supplied. (Ugwuayni Decl. at ¶24).

38. In light of the longstanding relationship – as friends and previous business associates – between the managing directors of Propetrol and QMF, and to avoid a potential arrest action of the Vessel, Mr. Ebohon remitted a partial payment to QMF for the Bunkers. (*Id.* at ¶25).

39. In light of this relationship, Propetrol, through Mr. Harry Ebohon, provided QMF with a payment of $100,000. This payment, however, was not an acknowledgment of liability for the bunkers. (*Id.*).

40. Further, when QMF proposed that Propetrol formally commit in writing to pay for the bunkers, Propetrol explicitly clarified that it was not responsible for such payments, given that at the time of the supply of the bunkers, the Vessel was under a bareboat charter to GMTS. (*Id.* at ¶26).

41. In light of the foregoing, QMF has not alleged and cannot credibly allege that Propetrol is a signatory to the arbitration provision or bound to arbitrate any dispute relating to the Bunkers.

6

42.     The scant allegations that QMF has made regarding an agent/principal or alter ego relationship between GMTS and Propetrol are insufficient to bind Propetrol to arbitration. Namely, a singular common owner/director, a common business address, and partial payments made by Propetrol in are inadequate to bind Propetrol to arbitration.

QMF Sends Notice of Arbitration to GMTS and Propetrol

43.     QMF emailed Propetrol and GMTS a one-page letter dated June 3, 2023 (the "**Notice of Arbitration**") purporting to commence arbitration proceedings against Propetrol and GMTS for nonpayment of fuel supplied by QMF to the Vessel. (Ex. 3 (Notice of Arbitration)).

44.     QMF claims in the Notice of Arbitration that it duly invoiced, GMTS, the Vessel, "and/or master and/or owners and/or charterers and/or managers and/or operators" of the Vessel for the fuel. (Ex. 3, Notice of Arbitration at p.1).

45.     The Notice of Arbitration provided that "[p]ursuant to Clause 20.1 of QMF's Terms and Conditions," QMF appointed an arbitrator (Mr. George Tsimis) and demanded "that Global/Propetrol appoint an arbitrator and proceed with the arbitration." (Ex. 3, Notice of Arbitration at p.1).

46.     Further, "[p]ursuant to QMF's Terms and Conditions, the arbitration shall be conducted in accordance with the Rules of the Society of Maritime Arbitrators of New York" and the "SMA [Society of Maritime Arbitrators] Rules requires Global/Propetrol to appoint its arbitrator within 20 days of receipt of this [Notice of Arbitration]…". (Ex. 3, Notice of Arbitration at p.1).

47.     The QMF Terms and Conditions to which QMF refers are the "General Terms and Conditions 2018" (the "**QMF T&C**").[2]

48.     According to its terms, the QMF T&C "shall apply to all deliveries contracted for unless the Sellers expressly confirm otherwise in the Confirmation Note." (QMF T&C at preamble).

---

[2] Available at: https://qmfenergy.com/about/terms-and-conditions/#:~:text=The%20Buyer%20shall%20have%20the,characteristics%20of%20the%20Marine%20Fuels.

49.     Propetrol, cognizant of the short deadline to appoint an arbitrator, requested through its Nigerian counsel that Dr. Wale Olawoyin serve as party-appointed arbitrator in the Arbitration on or about June 15, 2023.

50.     To date, to the best of Propetrol's knowledge, GMTS has not appeared or appointed an arbitrator in the Arbitration or any arbitration commenced by QMF.

QMF Arrests Propetrol's Vessels

51.     On or about May 5, 2023, QMF obtained the arrest of the vessel MT SANTA MONICA, (which vessel was at all relevant times owned by Propetrol), pursuant to an order issued by the Republic of Togo, Commercial Court of Lome (the "**Togo Court**").  (Declaration of Chukwunonso ('Nonso) Azih ("**Azih Decl**.") at ¶5).

52.     Propetrol successfully challenged the arrest and on May 30, 2023, the Togo Court set aside the arrest order and released the MT SANTA MONICA.  (*Id.* at ¶6).

53.     On or about June 7, 2023, QMF obtained the arrest of the vessel MT SANTA MONICA, pursuant to an order issued by the Togo Court "n°117-S / 2023 issued on 06 June 2023 by the President of the Commercial Court of Lome at the request of the company QMF Energy DMCC… for security and payment of the sum of [US]$1,100,000.00…".  (*Id.* at ¶7).

54.     The Togo Court explained that, to obtain the arrest order, "QMF… explained to the Claims Judge that it was a creditor of a company called Global Marine Technical Services Limited in the sum of $1,100,000.00" and that it requested the seizure of the MT SANTA MONICA, "the property of Propetrol Limited… in order to secure and pay the debt owed by the previous charterer of the vessel Global Marine Technical Services Limited." (*Id.* at ¶8).

55.     On or about June 26, 2023, Propetrol applied to the Togo Court for the release of the MT SANTA MONICA.  (*Id.* at ¶9).

56. Ultimately, the Togo Court of Appeal, pursuant to order n°0033/2023, confirmed the release of the MT SANTA MONICA subject to production of a guarantee of US$825,000.  (*Id.* at ¶10).

57. Propetrol obtained the release of the MT SANTA MONICA after providing a bank guarantee from FBNQuest Merchant Bank Limited, a Nigerian bank, dated July 24, 2023 (replacing the earlier guarantee dated July 10, 2023) in favor of QMF in an amount up to $825,000. (*Id.* at ¶11).

58. On or about November 3, 2023, QMF commenced an *in rem* action in the High Court of South Africa (the "**South Africa Action**") against the Vessel, alleging "[t]he Owners of the Vessel [Propetrol], alternatively her bareboat charterers [GMTS], are liable *in personam* to the Plaintiff for the bunkers so supplied [by QMF]….".  [*In the matter between QMF Energy DMCC and MV "GMTS TRACKER 01"*, Case No. A 49/2023, in the High Court of South Africa, Kwazulu-Natal Division, Durban, dated 03 Nov 2023).  (*Id.* at ¶12).

59. In the South Africa Action, QMF sought payment of $793,511.02 plus interest of $606,089.52.  (*Id.* at ¶13).[3]

60. On November 3, 2023, a warrant of arrest was issued in the South Africa Action. (*Id.* at ¶14).

61. As of the date of filing, the Vessel remains arrested in South Africa.  (*Id.* at ¶15).

Arbitration Proceeds Over Propetrol Objections

62. On or about November 4, 2023, Ms. Muge Anber-Kontakis advised the parties that she had been appointed as the third arbitrator, to act as Chair in the Arbitration ("**Chair Anber-Kontakis**" or the "**Chair**").  Chair Anber-Kontakis also provided disclosures about her previous work experience with arbitrators Mr. Tsimis (appointed by QMF) and knowledge of Dr. Olawoyin (appointed by Propetrol).

---

[3] Under U.S. law the supply of bunkers to a vessel gives rise to a maritime lien against the vessel to which the bunkers were supplied and an action *in rem* against the vessel.

63. On or about November 17, 2023, Propetrol, through its Nigerian counsel, raised a fundamental objection to Propetrol being named as a party in the Arbitration. (Ex. 4 (Email dated Nov. 17, 2023 from Nonso Azih Esq)).

64. Specifically, Propetrol noted that, among other things, QMF unequivocally stated that QMF supplied and invoiced GMTS, *not Propetrol*, for the fuel supplied to the Vessel, and that there is no contractual privity between QMF and Propetrol.

65. In response to Propetrol's fundamental objection, QMF's counsel claimed, *inter alia*, that "[t]here is a sufficient relationship between Propetrol and QMF to hold Propetrol liable for the debt" and that GMTS "was acting as an agent for a disclosed or undisclosed principal, or otherwise as the alter ego of Propetrol…" (Ex. 4 (Email dated Nov. 17, 2023 from Richard V. Singleton II of Blank Rome LLP)).

66. In additional correspondence on Propetrol's objection, QMF's counsel attempted to recast Propetrol's objection as to jurisdiction as a request "to issue an arbitration award in its favor – before any proceedings at all have been conducted…". (Ex. 5 (Email dated Nov. 19, 2023 from Richard V. Singleton II of Blank Rome LLP)).

67. QMF's counsel also claimed that "evidence will establish that GMTS and Propetrol are alter egos" in light of their common officers, directors, and shareholders. QMF also tried to show Propetrol's liability for all outstanding amounts merely because Propetrol made a small, partial payment to QMF. (*Id.*).

68. While Chair Anber-Kontakis advised the parties that the Arbitration Panel would revert on the issue, Chair Anber-Kontakis ultimately advised that "the circumstances of this matter do not warrant bifurcation. Rather, the Panel believes that, due to the nature of the subject matter and underlying disputes in this proceeding, it would be more efficient to deal with all arguments in one set of

submissions and issue one Final Award, as opposed to issuing partial final awards on various legal arguments such as jurisdiction….". (Ex. 6 (Email dated Nov. 21, 2023 from Chair Anber-Kontakis)).

QMF's Claim Submission Does Not Establish Binding Arbitration Provision

69. The Claim Submission is devoid of any credible allegations that Propetrol is bound to arbitrate any dispute with QMF.

70. Instead, QMF's Claim Submission is replete with blatant and ineffectual attempts to conflate Propetrol and GMTS – two separate entities – in order to force Propetrol to arbitrate.

71. First, QMF describes its claim as one for "Breach of Bunker Supply Contracts between QMF ENERGY DMCC, as Seller, and GLOBAL MARINE TECHNICAL SERVICES LTD. and PROPETROL LTD, as Purchasers…". (Ex. 2 Claim Submission at p.2).

72. However, in the Claim Submission, QMF concedes – as it must – that:

- the Vessel was chartered to GMTS (Ex. 2 Claim Submission ¶10);

- the September 8, 2022 Order Confirmation indicated that "GMTS was the Buyer" and was transmitted to Chriss Glaubitz at chriss@gmtsltd.com (*Id.* at ¶14, pg. 16 (Ex. 1 of Claim Submission)));

- the invoice for the September supply of Bunkers was sent to Chriss Glaubitz of GMTS (*Id.* at ¶16, pg. 20 (Ex. 2 of Claim Submission));

- the October 26, 2022 Order Confirmation indicated "GMTS was the Buyer" and was transmitted to Chriss Glaubitz at chriss@gmtsltd.com (*Id.* at ¶19, pg. 27 (Ex. 3 of Claim Submission));

- the invoice for the October supply of Bunkers was sent to Chriss Glaubitz of GMTS (*Id.* at ¶20, pg. 29 (Ex. 4 of Claim Submission));

- the November 3, 2022 Order Confirmation indicated "GMTS was the Buyer" and was transmitted to Chriss Glaubitz at chriss@gmtsltd.com, as well as Felix Raymond of GMTS, with copy to Propetrol (*Id.* at ¶22, pg. 33 (Ex. 5 of Claim Submission))[4];

- the invoice for the November supply of Bunkers was sent to Chriss Glaubitz of GMTS (*Id.* at ¶23, pg. 36 (Ex. 6 of Claim Submission)); and

- QMF identifies GMTS as its customer in the "Customer Ledger Card for Global Marine Technical Services" ((*Id.* at ¶26, pg. 39 (Ex. 7 of Claim Submission)).

73.  Indeed, *none* of the Order Confirmations or Invoices expressly name Propetrol at all.

74.  Instead, the gravamen of QMF's argument that Propetrol must arbitrate appears to be the long, boilerplate runner of generic "and/or" alternatives listed in the Order Confirmations and Invoices QMF sent to GMTS; namely, "GMTS Tracker 01 and/or master and/or owners and/or charterers and/or managers and/or operators and/or Global Marine Technical Services Limited." (*See, e.g.,* Claim Submission, pg. 16 and pg. 20 (Exs. 1 - 2 of Claim Submission))).

75.  Further, QMF's allegations that Propetrol and GMTS have a common shareholder and director and common business address is insufficient to force Propetrol into arbitration. (*See* Claim Submission at ¶¶7-8).

76.  What is more, QMF's allegations about the relationship between Propetrol and GMTS, including their shareholders and directors, are incorrect. (*See* Ugwuanyi Decl. ¶¶8-9, 14-17, etc.).However, even assuming Propetrol and GMTS had overlapping shareholders, directors or employees

---

[4] The November 3, 2022 Order Confirmation was sent to GMTS, with copy to "dare@propetrolltd.com", but is not addressed to Propetrol and does not name or identify Propetrol as Buyer or otherwise.

and a common physical address are insufficient to find that Propetrol is the alter ego of GMTS, or that GMTS acted as Propetrol's agent to find that Propetrol agreed to arbitrate any dispute with QMF.

77. Unless QMF is enjoined from pursuing its claims in arbitration, Propetrol will suffer irreparable harm because being compelled to arbitrate a dispute where Propetrol has not agreed to arbitrate constitutes irreparable harm. If the Arbitration were to proceed, Propetrol will incur the substantial time and expense in defending itself in the Arbitration proceeding, or risk an adverse outcome in those proceedings and potentially conflicting decisions. Being compelled to arbitrate a dispute where the parties have not agreed to arbitrate constitutes irreparable harm. There is no relief available that could remedy the harm to Propetrol if it is forced to submit to the Arbitration.

78. By reason of the foregoing, the court should issue an order enjoining arbitration of the dispute between the parties.

**WHEREFORE**, Petitioner Propetrol Limited respectfully requests that this Court:

I. Issue an order enjoining Respondent QMF Energy DMCC from prosecuting arbitral proceedings against Propetrol Limited.

II. Awarding Propetrol Limited the costs and fees associated with the prosecution of this action, including reasonable attorneys' fees, together with such other, further or different relief as this Court deems just and proper in the circumstances.

Dated: January 16, 2024
      New York, NY

                                  Respectfully submitted,

                                  WATSON FARLEY & WILLIAMS LLP

                                  /s/ John G. Kissane
                                  John G. Kissane
                                  Celinda Metro
                                  250 West 55th Street
                                  New York, NY 10019
                                  Tel: (212) 922-2200
                                  Fax: (212) 922-1512
                                  jkissane@wfw.com
                                  cmetro@wfw.com
                                  *Attorneys for Petitioner Propetrol Limited*